UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Debra Medalen,

Plaintiff,

vs. ORDER

Tiger Drylac U.S.A., Inc., and Dupont Powder Coatings U.S.A., Inc.,

Defendants. Civ. No. 01-331(RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 31st day of March, 2003.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by the provisions of Title 28 U.S.C. §636(c), upon the Defendants' Motions for Summary Judgment.[1]

At a Hearing on the Motions, the Plaintiff appeared by DeAnna M. McCashin, Esq., the Defendant Tiger Drylac U.S.A., Inc. ("Tiger

---

[1]In addition, the Defendant Tiger Drylac U.S.A., Inc., had sought sanctions against the Plaintiff, pursuant to Rule 11, Federal Rules of Civil Procedure, and Minnesota Statutes Section 549.21, but, by letter dated October 7, 2002, that Motion was withdrawn. See, Docket No. 41. Accordingly, we direct the Clerk of Court to record, in the docket entries, that the Defendants' Motion for Sanctions has been mooted by its withdrawal.

MAR 31 2003

Drylac"), appeared by Scott P. Drawe, Esq., and the Defendant Dupont Powder Coatings U.S.A., Inc. ("Dupont"), appeared by Peter J. Goss, Esq. For reasons which follow, we grant the Defendants' Motions for Summary Judgment.[2]

## II. Factual Background

This is a products liability action. The Plaintiff was employed by Watkins Aircraft Support Products ("WASP"), first in 1985, for six months on a part-time basis, and then again, in 1987, on a full-time basis. The Plaintiff worked as a grinder and painter, which necessitated her use of powder paint products that were designed, and manufactured, by the Defendants. The Plaintiff asserts that exposure to the Defendants' products caused her to develop a basal cell carcinoma -- a form of malignant skin cancer -- on the bridge of her nose. The Plaintiff alleges that Tiger Drylac manufactured a powdered paint product, which is identified as

---

[2]Two weeks after the Hearing on the Motions, the Plaintiff filed an informal Motion to Expand the Summary Judgment Record, which was both uninvited, and noncompliant with the Local Rules of this Court. Local Rule 7.1 requires that moving parties file with any Motion a Memorandum of Law, and they are obligated to secure a Hearing date. The Defendants oppose this Motion as untimely. We grant the Motion, notwithstanding its noncompliance with the Motion practice in this District, since the materials appended to the Plaintiff's Motion are the exhibits to the deposition of Dr. Terry T. Martinez, whose deposition, without exhibits, was already a part of the Record before us. Accordingly, we have reviewed -- unguided by either the Plaintiff, or much of the testimony of Dr. Martinez -- the exhibits to the Martinez deposition. See, Docket No. 46.

49/42330, and that Dupont manufactured a powdered paint product, which is identified as Silver Horn II, which she used in the course of her employment at WASP. As a consequence of her injuries, the Plaintiff asserts claims of common law negligence; strict liability; breach of express and implied warranty; misrepresentation; false statement in advertising, in violation of Minnesota Statutes Section 325F.67; a violation of the Minnesota Consumer Fraud Act, Minnesota Statutes Section 325F.69; and a violation of the reporting requirements of the Federal Consumer Products Safety Act, as promulgated in 16 C.F.R. pt. 1115.

The Defendants contest the Plaintiff's assertion, that their products are carcinogenic, or that they caused the Plaintiff's ailment. In addition, the Defendants specifically argue that the Plaintiffs' strict liability, and breach of warranty claims, are barred by the applicable statute of limitations; that the Plaintiff's breach of implied warranty claim is preempted by the Plaintiff's strict liability claim; that the Plaintiff's Consumer Fraud Act, false advertising, and Consumer Products Safety Act claims, fail to state a claim; and that the Plaintiff's misrepresentation claim is unsupported by evidence in the Record.

## III. Discussion

A. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored pro-

cedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Luigino's, Inc. v. Peterson, 307 F.3d 909, 911 (8th Cir. 2003); Duffy v. McPhillips, 276 F.3d 988, 991(8th Cir. 2002); Schoolhouse Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002); Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 901 (8th Cir. 2000).

For these purposes, a disputed fact is "material," if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine," if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026, 1028 (8th Cir. 2000); Austin v. Minnesota Mining and Manuf. Co., 193 F.3d 992, 995 (8th Cir. 1999); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Peter v. Wedl, 155 F.3d 992, 996 (8th Cir. 1998).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that

burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

B. Legal Analysis. Before addressing the core of the Defendants' Summary Judgment argument -- that the Plaintiff lacks evi-

dence to sustain her assertion that the Defendants' products were carcinogenic, and that their products caused her injury -- we consider the Defendants' other objections, starting with their assertion that the Plaintiff's strict liability, and breach of warranty claims, are time-barred.

1. The Defendants' Statute of Limitations Defense. Both the Plaintiff's cause of action for strict liability, and for a breach of warrant, are governed by a four-year statute of limitations, that commences when the injury accrued. See, Minnesota Statutes Section 541.05, Subdivision 2; and Minnesota Statutes Section 336.2-725(1); see also, City of Willmar v. Short-Elliott-Hendrickson, Inc., 475 N.W.2d 73, 80 (Minn. 1991)(breach of express and implied warranties); Erickson v. Coast Catamaran Corp., 414 N.W.2d 180, 181 (Minn. 1987)(strict liability); Metropolitan Life Ins. Co. v. M.A. Mortenson Companies, Inc., 545 N.W.2d 394, 400 (Minn.App. 1996)(breach of express warranty). The Defendants maintain that, because the Plaintiff first developed a sore on the bridge of her nose in 1996, and did not file this action until February 22, 2001, her claims are, necessarily, time-barred.

In her Motion papers, the Plaintiff claims, repeatedly, that the Complaint was filed on February 22, 1997, which, of course, would resolve the statute of limitations defense, as the Complaint would have been filed, and presumptively served, well within four

years of the date on which, even the Defendants concede, the Plaintiff's purported injury accrued. However, it appears that the Plaintiff's Complaint was not filed until February 22, 2001. At the Hearing, the Plaintiff acknowledged the discrepancy, and conceded that the Complaint was not filed until February 22, 2001.

Further, the Plaintiff claims that her injury accrued, within the meaning of the statute of limitations, when she was diagnosed with cancer, which was on March 21, 1997. Therefore, in analyzing the Defendants' statute of limitations defense, we must first determine the date on which the Plaintiff's injury accrued for statute of limitations purposes, and then decide when she commenced this action.

a. The Accrual Date.

i) Standard of Review. "As a general rule, the cause of action accrues when the accident occurs." Dalton v. Dow Chem. Co., 158 N.W.2d 580, 584 (Minn. 1968). "It is obvious that injustices could result from an application of the occurrence-of-the-accident test to the situation where the injured party does not discover that he has suffered any injury until after the period of limitation has run." Id. "'Quite recently there have been a wave of decisions meeting the issue head-on, and holding that the statute will no longer be construed as intended to run until the plaintiff has in fact discovered that he has suffered

injury, or by the exercise of reasonable diligence should have discovered it.'" Id., quoting Prosser, Torts (3 ed.) §30.

This rule was adopted by the United States Supreme Court in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282; see also, Karjala v. Johns-Manville Products Corp., 523 F.2d 155, 160-61 (8th Cir. 1975)("As in silicosis cases, there is rarely a magic moment when one exposed to asbestos can be said to have contracted asbestosis; the exposure is more in the nature of a continuing tort," and "[i]t is when the disease manifests itself in a way which supplies some evidence of causal relationship to the manufactured product that the public interest in limiting the time for asserting a claim attaches and the statute of limitations will begin to run").

As the Minnesota Supreme Court explained, in Dalton:

> The Urie case involved an F.E.L.A. claim arising out of an occupational disease, silicosis, caused by the continuous inhaling of silica dust. The court adopted the view of a california [sic] court that in this type of occupational disease case [] "no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurous [sic] consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves."

Dalton v. Dow Chem. Co., supra at 583, quoting Associated Indemnity Corp. v. Industrial Accident Comm'n, 124 Cal.App. 378, 381, 12 P.2d. 1075, 1076 (1932).

"Thus, the rule in the Federal Courts is that where injury is based on exposure to infectious or deleterious chemicals, the date upon which the statute of limitations begins to run is the date on which the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, his illness." Id.; see also, Klempa v. G.D. Searle and Co., 769 F. Supp. 1061, 1065 (D. Minn. 1991)("Under Minnesota law, two elements must be present for a cause of action to accrue for injuries related to a defective product: (1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act or omission."), aff'd, 963 F.2d 168 (8th Cir. 1992), citing Hildebrandt v. Allied Corp., 839 F.2d 396 (8th Cir. 1987).

ii) Legal Analysis. Here, prior to March of 1997, the Plaintiff was unaware that she had cancer. Nor did she know, until March of 1997, that the Defendants' products were, at least in her view, causing her cancer, or causing what she had -- prior to March of 1997 -- apparently believed was a sore on the bridge of her nose. Plainly, the Plaintiff's injury was not of a type that accrues when an accident occurs. As in cases dealing with silicosis and asbestosis, the Plaintiff's injury was, assertedly, the consequence of exposure to the Defendants' products over

a period of time, rather than at one point in time, and something of a continuing tort. As such, the Plaintiff was "injured" only when the accumulated effects of the allegedly deleterious substance manifested themselves in a way that manifested of a disease process in the nature of basal cell carcinoma.

Therefore, consistent with Dalton, since the Plaintiff's alleged injury was assertedly based upon her exposure to chemicals contained in the Defendants' products, the date on which the statute of limitations would begin to run was the date on which the Plaintiff discovered her illness. Here, the Plaintiff had no reason to suspect that the Defendants' products, or their alleged acts or omissions, were the cause of the sore on her nose, until her appointment with Dr. Heath, in March of 1997. Moreover, she was not diagnosed with basal cell carcinoma until March 21, 1997. Accordingly, we find that the Plaintiff's injury accrued on March 21, 1997, and we proceed to a determination of when this action was commenced for statute of limitations purposes.

b. The Commencement Date.

i) Standard of Review. In determining whether the Plaintiff's claims are time-barred, we must first determine when the Plaintiff's action commenced for statute of limitations purposes." McKenzie v. Lunds, Inc., 63 F. Supp.2d 986, 1001-02 (D. Minn. 1999). We apply Minnesota law on statute of

limitations questions because, as a substantive matter, the statute of limitations is controlled by State law. See, Larson v. Mayo Foundation, 21 Fed.Appx. 516, 517 (8th Cir. 2001), citing Hillary v. Trans World Airlines, Inc., 123 F.3d 1041, 1043 (8th Cir.1997); Larsen v. Mayo Medical Center, 218 F.3d 863, 866 (8th Cir. 2000), citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945); MW AG, Inc. v. New Hampshire Ins. Co., 107 F.3d 644, 646 (8th Cir. 1997)(stating, "Federal courts follow state substantive law to determine when an action is commenced for statute of limitations purposes"), citing Walker v. Armco Steel Corp., 446 U.S. 740, 752-753 (1980).

Under Minnesota law, an action is commenced upon the service of process, irrespective of when the Complaint was filed. See McKenzie v. Lunds, Inc., supra at 1001-02, citing Rule 3.01, Minnesota Rules of Civil Procedure; see also, Metropolitan Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co., 999 F.2d 1257, 1261 (8th Cir. 1993); Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 328-29 (8th Cir. 1993), cert. denied, 510 U.S. 1093 (1994). Moreover, State Rules for the service of process apply to pendant State claims. Id., citing Walker v. Armco Steel Corp., supra; Anderson v. Unisys Corp., 47 F.3d 302, 309 (8th Cir. 1995); Appletree Square I, Ltd. Partnership, 29 F.3d 1283, 1286 (8th Cir. 1994). In Minnesota, there are two means by which a plaintiff may effect service

of a Summons and Complaint -- either personally, pursuant to Rule 4.03, Minnesota Rules of Civil Procedure, or by acknowledgment of service by mail, pursuant to Rule 4.05, Minnesota Rules of Civil Procedure. See, Nieszner v. St. Paul School Dist. No. 625, 643 N.W.2d 645, 649 (Minn.App. 2002), citing Rule 4.05, Minnesota Rules of Civil Procedure; Turek v. A.S.P. of Moorhead, Inc., 618 N.W.2d 609, 611 (Minn. App. 2000)("In Minnesota, a plaintiff may effectively serve a summons and complaint by two methods: personally under Minn.R.Civ.P. 4.03 or acknowledged by mail under Minn.R.Civ. P. 4.05").

ii) Legal Analysis. Here, Tiger Drylac was not served until June 14, 2001, and Dupont was not made a party to the action until February 4, 2002, and was not served until February 15, 2002. As we have noted, the Plaintiff initially, and erroneously had argued, that she commenced this action on February 22, 1997, which is over a month prior to the date on which she asserts that her claim accrued, but her original Complaint was not filed until February 22, 2001. Notwithstanding the filing date, however, the Plaintiff is also mistaken in her belief that her action commenced upon the filing her Complaint, as strict liability, and breach of warranty, are State law causes of action, which are not commenced until the Summons and Complaint are served. As a result, since the Plaintiff's strict liability and breach of

warranty claims accrued, in March of 1997, and the earliest date on which service of process was effected was June 14, 2001, we are compelled to find, as a matter of law, that those causes of action are time-barred, and we grant the Defendants' Motion for Summary Judgment, as to those claims, on that ground.[3]

2. The Plaintiff's Consumer Fraud Act, False Advertising, and Consumer Product Safety Act Claims.

The Defendants argue that the Plaintiff's Consumer Fraud Act, false advertising, and Consumer Product Safety Act claims, fail to state claims on which relief can be granted, and they assert that the Plaintiff can only recover injunctive, or equitable relief, if she is successful on those claims, and yet the Plaintiff has not prayed for those forms of relief in her Complaint. The Plaintiff concedes that she is not seeking injunctive, or equitable relief, and therefore, she has withdrawn those claims, and consequently, we grant the Defendants' Motions for Summary Judgment, as to the Plaintiff's Consumer Fraud Act, false advertising, and Consumer Product Safety Act claims.

These grants of Summary Judgment do not resolve the case, however, as the Plaintiff has asserted claims which are not time-

[3]Having determined that Summary Judgment for the Defendants is warranted on limitations grounds, we do not address the Defendants' contention that the Plaintiff's breach of implied warranty claim is preempted by the Plaintiff's strict liability claim.

barred, and which have not been voluntarily dismissed. As to those remaining claims, the Defendants seek an entry of Summary Judgment, arguing that, as a matter of law, the Plaintiff has failed to present a submissible case of causation for the Jury's consideration, and we proceed to that issue.

3. Carcinogenicity and Causation. The critical thrust of the Defendants' Summary Judgment Motions lies in their argument that the Plaintiff has failed to establish causation, which is an element of each cause of action she has alleged. As a part of that argument, the Defendants also contend that the Plaintiff has failed to establish the carcinogenicity of their products. In particular, the Defendants challenge the qualifications of the Plaintiff's expert, on whose opinions she has relied in order to support her claim that the Plaintiff's allegedly carcinogenic products caused her injury. Given the interconnection between the evidence required to prove that the Defendants' products were both carcinogenic, and the cause of the Plaintiff's injury, and that required to establish the requisite foundation for the Plaintiff's expert witnesses, we consider these arguments together.[4]

---

[4]The Defendants also submit that the Plaintiff's misrepresentation claim is unsupported by evidence in the Record, and argue that the Plaintiff has produced no evidence of either a misrepresentation, or her reliance thereon. Given our disposition of the Defendants' causation and carcinogenicity challenges, a further (continued...)

a. Standard of Review. "To prove causation in a toxic tort case, a plaintiff must show both that the alleged toxin is capable of causing injuries like that suffered by the plaintiff in human beings subjected to the same level of exposure as the plaintiff, and that the toxin was the cause of the plaintiff's injury." Bonner v. ISP Technologies, Inc., 259 F.3d 924, 928 (8th Cir. 2001), citing Wright v. Willamette Indus., Inc., 91 F.3d 1105, 1106 (8th Cir. 1996); see also, Mattis v. Carlon Electrical Prod., 295 F.3d 856, 860 (8th Cir. 2002). "In other words, the plaintiff must put forth sufficient evidence for a jury to conclude that the product was capable of causing her injuries, and that it did." Id. Our Court of Appeals has held, however, that "[t]he first several victims of a new toxic tort should not be barred from having their day in court simply because the medical literature, which will eventually show the connection between the victims' condition and the toxic substance, has not yet been completed." Turner v. Iowa Fire Equip. Co., 229 F.3d 1202, 1208-09 (8th Cir. 2000); see also, Bonner v. ISP Technologies, Inc.,supra at 928.

In other words, the Plaintiff does not "need to produce 'a mathematically precise table equating levels of exposure with

---

[4](...continued) discussion of this aspect of the Defendants' Motions is unnecessary.

levels of harm' in order to show" that she was exposed to a toxic level of the Defendants' products, "but only 'evidence from which a reasonable person could conclude'" that her exposure probably caused her injury. Bednar v. Bassett Furniture Mfg. Co., 147 F.3d 737, 740 (8th Cir. 1998), quoting Wright v. Willamette Indus., Inc., supra at 1107; see also, Bonner v. ISP Technologies, Inc., supra at 928. "If a properly qualified medical expert performs a reliable differential diagnosis through which, to a reasonable degree of medical certainty, all other possible causes of the victims' condition can be eliminated, leaving only the toxic substance as the cause, a causation opinion based on that differential diagnosis should be admitted. Turner v. Iowa Fire Equip. Co., supra at 1209.

As explained by the Court, in Glastetter v. Novartis Pharmaceuticals Corp., 252 F.3d 986, 990 (8th Cir. 2001):

> In performing a differential diagnosis, a physician begins by "ruling in" all scientifically plausible causes of the plaintiff's injury. The physician then "rules out" the least plausible causes of injury until the most likely cause remains. The final result of a differential diagnosis is the expert's conclusion that a defendant's product caused (or did not cause) the plaintiff's injury."

The Courts, however, have been alert to recognize the distinct difference between a differential diagnosis, which is employed by a treating physician so as to identify the medical condition that

required treatment, and "the type of causal diagnosis which the legal community calls "differential." Turner v. Iowa Fire Equip. Co., supra at 1208.

b. Legal Analysis. Here, the Plaintiff intends to introduce the testimony, at Trial, of two expert witnesses. First, the Plaintiff intends to proffer the testimony of Dr. Terry T. Martinez, Ph.D., who was retained by the Plaintiff in order to prove that the Defendants' products are carcinogenic, that is, the Plaintiff anticipates that Dr. Martinez will "rule in" the Defendants' products as the cause of her injury. Second, the Plaintiff plans to present the testimony of Dr. Paul M. Heath, her treating plastic surgeon, who first diagnosed the Plaintiff's condition as basal cell carcinoma, and who is expected to "rule out" the other causes for the basal cell carcinoma that the Plaintiff contracted.

The Defendants contest the admissibility of the experts' opinion testimony and, therefore, our threshold consideration relates to that issue and, if we find that the doctors have the requisite foundation to support the opinions they voice, we must then decide whether those opinions are otherwise admissible, under Rule 702, Federal Rules of Civil Procedure.

i) Standard of Review. "The admissibility of expert testimony is governed, in large measure, by Rule 702, Federal Rules of Evidence, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Teska v. Potlatch Corp., 184 F.Supp.2d 913, 918 (D. Minn. 2002), citing Rule 702, Federal Rules of Evidence (2001).[5]

"As the Supreme Court has explained, 'Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the "assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline."'" Engleson v. Little Falls Area Chamber of Commerce, 210 F.R.D. 667, 670 (D. Minn. 2002), quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999), quoting, in turn, Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993). "When evaluating the

---

[5]Rule 703, Federal Rules of Evidence, also imposes the following restrictions on the provision of expert opinion evidence:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

admissibility of expert testimony, a Court must look to both the relevance, and the reliability, of the proffered testimony." Id., citing Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001); see also, Daubert v. Merrell Dow Pharm., Inc., supra at 591-93; Bonner v. ISP Technologies, Inc., supra at 929; Jauregui v. Carter Mfg. Co., supra at 1082.

"'When it comes to admission of expert testimony under the Federal Rules of Evidence, a trial judge has a gatekeeping responsibility to "ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand."'" Id., quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 714-15 (8th Cir.2001), quoting, in turn, Kumho Tire Co., Ltd. v. Carmichael, supra at 141. "'Both the Eighth Circuit Court of Appeals and the Supreme Court have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that expertise, or that are not founded on a reliable methodology.'" Teska v. Potlatch Corp., at 919, quoting Smith v. Rasmussen, 57 F.Supp.2d 736, 766 (N.D. Iowa 1999), citing Kumho Tire Co., Ltd. v. Carmichael, supra at 141.

"Ultimately, 'it is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the

case.'" Id., quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., supra at 715, 254 F.3d 706, citing Kumho Tire Co., Ltd. v. Carmichael, supra at 156, 119 S.Ct. 1167. "'Once initial expert qualifications and usefulness to the jury are established, however, a district court must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702, Kumho Tire, and related precedents.'" Id., quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., supra at 715.

"'[B]efore accepting the testimony and opinion of an expert witness, the Trial Court is charged with the "gatekeeper" function of determining whether the opinion is based upon sound, reliable theory, or whether it constitutes rank speculation.'" Id., quoting Kemp v. Tyson Seafood Group, Inc., 2000 WL 1062105 at *2 (D. Minn. July 19, 2000), citing Kumho Tire Co. v. Carmichael, supra at 141, 119 S.Ct. 1167, and Daubert v. Merrell Dow Pharmaceuticals, Inc., supra at 589-90. "'Expert testimony that is speculative is not competent proof and contributes "nothing to a legally sufficient evidentiary basis."'" Id., quoting Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1057 (8th Cir.2000), quoting, in turn, Weisgram v. Marley Co., 528 U.S. 440, 454 (2000).